The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant,

v.

PRESBYTERIAN HOSPITAL OF DALLAS, Appellee.

No. 18236.

Court of Civil Appeals of Texas, Dallas.

Nov. 21, 1973.

Rehearing Denied Dec. 20, 1973.

Larry M. Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellant.

George Wm. Perry, Hartt & Perry, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

This suit was instituted by Presbyterian Hospital of Dallas (hereinafter called Hospital) against Taylor W. Hodges in which Hospital sought recovery of the sum of $5,819.68 for services rendered to Hodges during a period of hospitalization following an automobile accident on June 15, 1968. Hospital, as assignee of Hodges, also sought recovery from Mutual Life Insurance Company of New York (hereinafter called Mutual) on a group hospitalization insurance policy which had been issued by Mutual to Nickel Chrysler-Ply-

mouth of Midland, Texas (hereinafter called Nickel). Trial was to the court, without a jury, and based upon a finding by the court that Hodges was an employee of Nickel at the time of the injuries sustained by him on June 15, 1968, and that Hodges was an insured on said date under the policy issued by Mutual, the court rendered judgment in favor of the Hospital against both defendants. Only Mutual has perfected an appeal.

Prior to trial all parties entered into a written stipulation that certain facts shall be taken as true and established by a preponderance of the evidence. The agreement included thirty-six stipulations of fact, including documentary evidence, and also deposition testimony of Taylor W. Hodges and Milton L. Nickel.

The material facts so stipulated may be summarized as follows:

Effective October 15, 1965, Mutual issued its Group Policy No. G–8728 to Nickel. This policy extended major medical expense insurance coverage to employees of Nickel. Premiums for employees' coverage under this policy were paid by Nickel. The policy contained an express provision that an employee would cease being insured upon "termination of his continuous service in an eligible class of employees." It defined "eligible class of employees" as "All employees of the employer who are employed on a full-time basis, excluding temporary employees." The term "continuous service" was defined as follows:

A period of uninterrupted full-time employment by the Employer. Unless employment actually is terminated, temporary absence or part-time employment for a period authorized by the Employer because of sickness or injury, or absence for any period not exceeding two months during an authorized vacation, leave of absence or layoff, shall not be construed as interrupting continuity of service and shall be included in determining length of continuous service with the Employer.

Hodges was employed by Nickel in November 1965 and received Certificate No. 34 certifying his insurance in accordance with the provisions of the group policy issued to Nickel. His work for Nickel was that of a service writer in the automobile agency repair department for which he was paid a commission. Hodges was entitled to two weeks' vacation pay each year but Nickel had no rules that required an employee to take a vacation. On May 6, 1968, Nickel gave Hodges a check in the amount of $305.85, which was stated to be for vacation pay. Hodges did not take a vacation in May 1968 but worked throughout that month and received a check in the sum of $492.60 on June 5, 1968, which represented commission payments through the month of May 1968. Hodges' former wife and their two children had moved from Midland, Texas, to Dallas where she was employed at Texas Instruments. Desiring to be closer to his former wife and their two children Hodges left Midland, Texas, on June 7, 1968, to go to Dallas to try to find employment. He made the trip to Dallas in a rental car owned by Nickel. At the time Hodges left Midland to go to Dallas he did not intend to return to Midland if he could find work of equivalent kind in Dallas. Upon leaving Midland he advised Nickel "I'm leaving. If I can find something, I'm gone. I won't be back." After arriving in Dallas Hodges obtained full time employment on June 11, 1968, with Preston Road Dodge of Dallas. His job was assistant parts manager for which he was to be paid a monthly salary. He was given a promise of a better salary plus a commission in about ninety days.

Hodges testified in his deposition that when he left Midland to go to Dallas to try to find employment he considered that he was on vacation. As to his purpose in leaving Midland and his intent to stay in Dallas if he obtained permanent employment, Hodges testified:

Q When you left Midland in early June of 1968 and went to Dallas, what discussion, if any did you have with your boss at Nickel Chrysler-Plymouth as to why you were leaving and what you were going to do?

A The reason that I was thinking about leaving was because my ex-wife had moved down there in that area and went to work, and if I could find anything in this two week span then I would also try to go back and live with her.

* * *

Q And in fact, you did find something in Dallas?

A Right.

* * *

Q So you went to work then, and you did not consider this to be a part-time job with Preston Road Dodge at the time you got the job; it was a permanent job?

A At the time, right.

Q It was permanent, full-time employment?

A Right.

Following his employment with Preston Road Dodge on June 11, 1968, Hodges worked continually for that company for four days. He was injured in an automobile accident in Dallas on June 15, 1968. Hodges was taken to Parkland Hospital on account of his injuries and later transferred to Presbyterian Hospital on June 16, 1968. In that institution he was treated for his injuries until October 12, 1968. The reasonable cost of the personal services and material furnished to Hodges was $5,819.68.

While he was in the hospital he was asked to fill out a form concerning hospitalization. Whoever was filling out the form asked him to give the name of his employer and he responded "Preston Road Dodge." This name was typed in the form but someone, whose identity is unknown scratched out the words "Preston Road Dodge" and, in handwriting, inserted "Nickle Chrysler Plymouth."

On June 16, 1968, Hodges assigned to Hospital whatever benefits were due under the insurance policy issued by Mutual to Nickel.

In its primary point of error appellant Mutual contends that the trial court erred in awarding recovery under the group policy involved because the stipulation of facts, constituting the record in this case, does not as a matter of law compel a judgment that the Hospital sustained its burden of proving that on the date of his injuries Hodges was an employee of Nickel. This point is sustained.

As Hodges' assignee it was clearly the burden of the Hospital to prove that at the time he sustained his injuries on June 16, 1968, Hodges was an employee of Nickel within the meaning of the group policy issued by Mutual. Schooley v. Metropolitan Life Ins. Co., 77 S.W.2d 886 (Tex.Civ. App.—Austin 1934); Preferred Life Ins. Co. v. Stephenville Hospital, 256 S.W.2d 1006 (Tex.Civ.App.—Eastland 1953); Republic Bankers Life Ins. Co. v. Herring, 463 S.W.2d 743 (Tex.Civ.App.—Waco 1971).

Did the Hospital sustain this burden within the stipulation of facts, together with the depositions, so that the trial court was compelled to find, as a matter of law, that Hodges was an employee of Nickel at the time he sustained his injuries in Dallas on June 16, 1968? Of course, the answer to this question must depend upon the agreed facts as applied to the terms and provisions of the insurance policy concerning status of employees. No one contends that the policy in question was ambiguous. It clearly defines the eligible class of employees covered by the policy as being those employees who are employed on a full-time basis. It is also clearly provided that an employee would cease being insured under the policy upon termination of his continuous service as a full-time employee. The policy goes further and defines "continuous service" as being a period of uninterrupted full-time employment

by the employer. Then follows a qualification to the effect that absence during authorized vacation will not be construed as interrupting continuity of service.

When we consider the admitted facts in the light of the express terms and provisions of the policy, the trial court's finding and conclusion that Hodges was an employee of Nickel, within the meaning of the policy, at the time of his injuries in Dallas on June 16, 1968, is insupportable in law and cannot stand.

Hodges was a full-time permanent employee of Nickel at Midland, Texas. His former wife and two children moved to Dallas. He desired to be close to them. To carry out this desire he left Midland on June 7, 1968, telling his employer "I'm leaving. If I can find something, I'm gone. I won't be back." He did go to Dallas and shortly thereafter he did find work with Preston Road Dodge. His testimony by deposition is clear and unequivocal that he accepted this employment on June 11, 1968, as being "permanent, full-time employment." Therefore, on June 11, 1968, having found and accepted full-time permanent employment with another employer, Hodges ceased to be a full-time employee of Nickel within the definition in the policy issued by Mutual.

It is of no consequence that Hodges did not notify Nickel of the termination of his employment. Hodges had already told Nickel that if he found work he would not be back. He did find employment. It is elementary that employment may be terminated by either the employer or by the employee. The fact that an insured employee accepts other employment requires the finding that his employment has been terminated within the meaning of a termination of employment clause in a group policy, regardless of whether or not the policy contains an express provision to this effect. Annot., 68 A.L.R.2d 8, at 42, 69 (1959), and cases therein cited.

The record in this case is conclusive that when Hodges started to work for Preston

Road Dodge, after giving due consideration to what he was doing, he intended to enter, and he did enter, a new permanent full-time employment. In so doing he finally terminated his employment with Nickel. No other inference or conclusion can reasonably be drawn from the undisputed facts and circumstances before us. Connecticut General Life Ins. Co. v. Horner, 21 S.W.2d 45 (Tex.Civ.App.—Amarillo 1929, writ, dism'd); Adkins v. Aetna Life Ins. Co., 43 S.E.2d 372 (W.Va.1947).

■ Appellee argues that since the accident occurred at a time within the two-week vacation period claimed by Hodges his period of uninterrupted employment with Nickel had not terminated and the provisions of the policy in question were enforceable. We cannot agree. The vital fact presented by this record is that Hodges, by his own overt act and expressed intention, terminated his employment with Nickel at the time he accepted full-time permanent employment with Preston Road Dodge. No one would question the fact that an employee of one employer, while on vacation from that employment, can validly terminate such prior employment and accept a job or position from another employer. The fact that such employee does elect to terminate one employment and accept another during this vacation period does not act to extend the coverage period of the group policy containing a termination of employment clause as does the policy in question. Annot., 68 A.L.R. 2d 8, at 62–63 (1959), and cases therein cited.

■ The record reveals that Nickel paid Mutual premiums on the group policy, including coverage for Hodges, for the first two weeks in June 1968, which would include the date of the injuries sustained by Hodges. Appellee argues that the receipt and retention by Mutual of these premiums would support its theory that the policy was in full force and effect on the date of injury. We cannot agree with this contention. Again, the vital fact which determines the existence, vel non, of policy coverage in this case is that of termination of employment. As previously demonstrated Hodges effectively terminated his employment with Nickel prior to the date of the injury sustained by him. The mere fact that premiums were paid and received by the insurance company covering a period of time extending beyond the termination of employment does not have the legal effect of extending the policy coverage. De Pauw v. Aetna Life Ins. Co., 268 S.W.2d 734 (Tex.Civ.App.—Texarkana 1954); Annot., 68 A.L.R.2d 8, at 65–66 (1959), and cases therein cited.

We hold that as a matter of law Hodges terminated his employment with Nickel on June 11, 1968 so that he was not covered by the policy issued by Mutual to Nickel when he sustained his injuries on June 16, 1968. Texas Rules of Civil Procedure, rule 301 requires that we render the judgment which should have been rendered by the trial court. Accordingly, we reverse the judgment against Mutual and here render judgment denying Hospital any recovery against Mutual.

In view of our disposition of this case we need not consider or pass upon the questions concerning penalty, interest and attorneys' fees presented by appellant's third point of error.

The judgment of the trial court is reversed and judgment is rendered that Presbyterian Hospital of Dallas take nothing against The Mutual Life Insurance Company of New York.

Reversed and rendered.