[Civ. No. 60940. Second Dist., Div. Two. Sept. 3, 1981.]

BEVERLY N. DANIELS et al., Plaintiffs and Appellants, v.
EQUITABLE LIFE ASSURANCE SOCIETY OF THE
UNITED STATES et al., Defendants and Respondents.

468

COUNSEL

Rick Edwards and Matthew Duling for Plaintiffs and Appellants.

Burke, Williams & Sorenson, Thomas H. Downey, Charles T. Van Deusen, James C. Logsdon and Steven P. Burke for Defendants and Respondents.

OPINION

**BEACH, J.**—This case arises out of an action brought by the wife and children of the decedent, Ronald L. Daniels, a former employee of defendant Pacific Gas and Electric Company (PG&E), for life insurance proceeds allegedly owed them as Daniels' beneficiaries of a group life insurance policy issued by respondent insurance company. The trial court granted defendants' motion for a nonsuit, and this appeal by plaintiffs followed. We affirm.

Ronald Daniels commenced working for PG&E on January 6, 1964. As a PG&E employee, Daniels was covered under a group life insurance policy issued by defendant insurance company. The individual certificate of insurance issued to Daniels specifically provided for automatic termination of the group policy upon termination of employment with PG&E, and the right to convert the group life insurance policy to an individual life insurance policy if application therefor was made within 31 days following termination of employment.

On March 15, 1974, Daniels voluntarily terminated his employment with PG&E. Two days later he started working for his new employer, Wismer and Becker. On April 27, 1974, Daniels was killed in an automobile accident.

Plaintiffs sought to collect as beneficiaries of Daniels under the PG&E group life insurance policy. Defendant insurance company denied payment, and this suit by plaintiffs followed. On appeal, plaintiffs'

principal contention is that the failure to give Daniels notice of the conversion privilege at the time of termination extended coverage for an additional 60 days following expiration of the 31-day period under Insurance Code section 10209.

DISCUSSION:

### 1. *Effect of Giving or Failure to Give Notice of Conversion Privilege.*

Insurance Code section 10209 requires an insurance carrier to issue to the employer for delivery to the insured employee an individual certificate setting forth the pertinent conditions relating to the exercise of the conversion privilege. Thus, the insured employee must be told of his right, upon termination of employment, to convert his group policy to an individual policy without evidence of insurability within 31 days after termination. (Ins. Code, § 10209, subd. (b).) ■ At bench, it is not in dispute that Daniels was given an individual certificate at the time of his coverage under the group plan. Also not in dispute is the fact that Daniels did not exercise his conversion privilege within the allotted 31-day period. Plaintiffs maintain, however, that Daniels' insurance coverage under PG&E's group plan could not be deemed terminated without additional notice to Daniels of the conversion right at the time of his termination.

Assuming Daniels was entitled to additional notice of his conversion privilege at the time of termination, the failure to give him such notice would have extended only the time within which to apply for conversion and not, as plaintiffs are contending, insurance coverage, as we shall explain below.

Pertinent to this particular issue is the language of subdivision (d) of Insurance Code section 10209. That subdivision provides: "[If] the employee dies during the 31-day period within which he is entitled to have an individual policy issued to him in accordance with this section and before any such policy shall have become effective, the amount of life insurance which the employee is entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made.

"If any employee insured under a group life insurance policy delivered in this state becomes entitled under the terms of such policy to have an individual policy of life insurance issued to him without evidence of insurability, subject to making of application and payment of

the first premium within the period specified in such policy, and if such employee is not given notice of the existence of such right at least 15 days prior to the expiration date of such period, then, in such event the employee shall have an additional period within which to exercise such right, but *nothing herein contained shall be construed to continue any insurance beyond the period provided in such policy.* This additional period shall expire 25 days next after the employee is given such notice but in no event shall such additional period extend beyond 60 days next after the expiration date of the period provided in such policy...." (Italics added.)

In *Preaseau v. Prudential Ins. Co. of America* (9th Cir. 1979) 591 F.2d 74, the husband of the plaintiff was covered under his employer's group accident policy. The husband died 90 days after voluntarily terminating his employment. The husband had not exercised his right to convert the group policy to an individual policy. Upon termination, the husband had not been given notice of his conversion right. The widow sued, seeking recovery of benefits under the group policy. She interpreted the second paragraph of subdivision (d) to mean that both the option for extended coverage and the entitlements to benefits are extended 60 days beyond the 31-day period when proper notice of the right of conversion is not given. In rejecting the contention, the Ninth Circuit court stated: "This court has noted that '[t]he language of a statute is the best and most reliable index of its meaning, and where the language is clear and unequivocal it is determinative of its construction.' [Citation omitted.] The California courts subscribe to a similar rule. [Citation omitted.] We believe that the statutory language clearly indicates that the failure to give proper notice provides the insured with an additional 25 to 60 days during which to exercise the option to convert to individual coverage, but does not otherwise extend the entitlement to benefits.

"Subsection (b) of 10209 grants an employee covered by group insurance an option of 31 days to convert to individual coverage without producing evidence of insurability. The first paragraph of (d) specifies that if the employee dies within the 31 day period, he is still entitled to insurance benefits.

"The second paragraph of (d) must be construed as extending the option period of (b) and not the coverage period of the first paragraph of (d). First, the second paragraph begins by referring to the condition of (b): 'If any employee ... becomes entitled ... to have an individual

policy of life insurance issued to him without evidence of insurability. Second, the section refers to 'such right,' meaning the right to obtain individual coverage without producing evidence of insurability. Third, the paragraph refers to the 'exercise [o]f such right,' a phrase that would apply to the exercise of the option to convert involved in (b), but would not relate to the obtaining of benefits under the first paragraph of (d). Finally, the second paragraph of (d) is devoid of any language similar to the language in the first paragraph of (d) extending the period of coverage. In short, the language of the second paragraph of (d) indicates that it was written to supplement (b), dealing with the option to convert to individual insurance, and not to extend the coverage period provided in the first paragraph of (d).

"The proviso to the second paragraph of (d) further compels this reading. It provides: 'nothing herein contained shall be construed to continue any insurance beyond the period provided in such policy.' This proviso must be read as meaning that the legislature did not intend the second paragraph to extend the period of coverage; rather it extends only the time limit on the option to convert. [Fn. omitted.]

"Our reading is further reinforced by the cases and commentaries that have discussed this issue. They have typically distinguished between the option to convert to individual coverage and the continued entitlement to benefits under the policy. They have also determined that an extension of the time limit for conversion does not in itself provide an extension of the entitlement for benefits. [Citations omitted.] Moreover, courts that have construed provisions very similar to § 10209(d) have read them as extending the option to convert, but not the entitlement to benefits. [Citations omitted.]" (*Id.* at pp. 81-82.)

In this case, Daniels voluntarily terminated his employment with PG&E on March 15, 1974. He died on April 27, 1974. Had Daniels died within the 31-day period provided for in subdivision (b), he would have been covered and his beneficiaries would have been entitled to his group life insurance proceeds. Because Daniels' death occurred beyond the 31-day period, under the reasoning of *Preaseau, supra*, which we find persuasive, any failure to give Daniels notice at the time of his termination that he had a right to convert his group life insurance to an individual life policy would have resulted only in an extension of time within which to apply for conversion; it would not have extended his insurance coverage.

■ The death of the former employee ends any right or power to exercise a conversion option to increase the amount of or to renew a lapsed life insurance policy. The option is a personal power which cannot be exercised by the heirs or personal representatives of the insured after his death. Were the rule otherwise, no element of risk would be involved—a concept completely at variance with the nature of insurance as protection against risk. Also, a contrary rule would permit abuse against which there would be little if any defense. To illustrate, assume Lawyer "A" has a $100,000 life insurance policy with a state bar plan; during his life the insurance company offers a conversion privilege whereby anyone in the plan, for an additional premium and by notifying the company, may convert to an increased amount, e.g. $500,000 without additional medical examination; the conversion period is to be open until April 1 of the same year; "A" dies on March 1 without making an election to convert or evidencing any intent to do so. Can his widow compel the insurance company to pay $500,000 instead of $100,000 by claiming merely that "A" intended to or was going to so elect, and therefore she should have the right to make such election in his place? It does not take much imagination to realize that such claims would be made in every case where a member of such group insurance plan died without making such an election under a limited conversion program.

## 2. *Effect of Accrued Vacation Pay Upon Termination Date*

■ Plaintiffs contend that although Daniels gave PG&E written notice that March 15, 1974, would be his last day of work, the fact that Daniels was taking accrued vacation time until April 12, 1974, extended his actual termination date. Taking the April 12 date as Daniels' actual termination date, plaintiffs argue that Daniels' death on April 27 was well within the 31-day period provided for in subdivision (b) of Insurance Code section 10209, and therefore Daniels was still covered under the PG&E group plan.

Counsel have not cited, nor has our own research revealed, a California case on point. However, counsel for defendants have cited various federal and sister state decisions dealing with this issue. It appears from those cases that an employee is deemed to have terminated employment on the last day of actual work. (See, *e.g., Verlo* v. *Equitable Life Assur. Soc. of U. S.* (8th Cir. 1977) 562 F.2d 1034, 1037, and cases cited therein.) Here, after terminating his employment with PG&E on March 15, 1974, and during the period of alleged "accrued vacation,"

Daniels commenced working for another employer on March 17, 1974. In so doing, he finally terminated his employment with PG&E. In *Mutual L. I. Co. of N. Y.* v. *Presbyterian Hosp. of Dallas* (Tex.Civ.App. 1973) 503 S.W.2d 870, 874, the court, in dealing with a similar issue, said: "No one would question the fact that an employee of one employer, while on vacation from that employment, can validly terminate such prior employment and accept a job or position from another employer. The fact that such employee does elect to terminate one employment and accept another during this vacation period does not act to extend the coverage period of the group policy containing a termination of employment clause as does the policy in question."

*Gaulden* v. *Pilot Life Insurance Company* (1957) 246 N.C. 378 [98 S.E.2d 355], relied on by plaintiffs is distinguishable. In *Gaulden*, the retiring employee was granted terminal leave at full pay because of unused annual leave and sick leave. The employee's terminal leave commenced on May 10, 1955, and was to continue until July 31, 1955, with retirement to become effective August 1, 1955. The employee died before expiration of his terminal leave. The court held that the terminal leave granted the employee constituted a type of leave of absence which was not to be deemed a cessation of active work. In contrast, here Daniel's death occurred not during a period of uninterrupted employment with PG&E but during his employment with another employer. Daniels was not on any kind of "leave." Instead, he completely quit. On March 1, Daniels notified PG&E that he would quit on March 15 and requested that he be paid in a lump sum for his work and for approximately 22 days of accumulated vacation time which he had not taken. Pursuant to his request he was paid up to the day that he quit in a lump sum which included payment for accumulated vacation. Thus, on March 15 he was a completely terminated employee and not carried on the records of PG&E as an employee on vacation or leave or for any other purpose.

We conclude that at the time of his death Daniels was not covered under the PG&E group life insurance plan.

█ Plaintiffs additionally claim entitlement to the insurance because Daniels "paid" for the premium therefor. There is no proof of this. This is an illusory straw which plaintiffs grasp. We have carefully examined the record including the exhibits. The copy of a PG&E billing statement to the insurance company (plaintiffs' exhibit 4) offered by plaintiffs was correctly excluded by the trial court as irrelevant. It would have shown only that for the month of March 1974 PG&E paid a pre-

mium of $356,625.12 for some nearly 25,000 insured lives. No employee was identified thereon. It did not disclose that Daniels, by intentionally and voluntarily paying an insurance premium coverage for April, thereby elected to be covered. Similarly, exhibits 2-A to 2-F of Daniels' pay vouchers merely disclose a system of weekly payments for the *past* work week with appropriate deductions applicable to such work. The insurance premiums were automatically deducted from every other pay check, i.e. two times a month. There was no proof that any of the premiums paid on behalf of Daniels were for the purpose of providing coverage for a period of time in the future, including that period from March 15 to April 15 of 1974. Moreover, even if there had been an automatic deduction for future premiums, it would have been, in Daniels' case, simply a bookkeeping mistake and the premiums would have been returnable as unauthorized and unrequested by Daniels. Such payment would not have extended Daniels' coverage beyond the termination of employment in light of the specific provisions of the group policy and the certificate of insurance as pointed out by defendants that the insurance of any employee would cease automatically upon termination of employment. Only the right to elect coverage exists past employment. (*Mutual L. I. Co. of N. Y.* v. *Presbyterian Hosp. of Dallas, supra,* 503 S.W.2d 870, 874; *Conger* v. *Travelers Insurance Company* (1966) 266 N.C. 496 [146 S.E.2d 462]; *Preaseau* v. *Prudential Ins. Co. of America, supra,* 591 F.2d 74.)

The judgment is affirmed.

Fleming, Acting P. J., and Compton, J., concurred.

On September 30, 1981, the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied October 28, 1981. Bird, C. J., was of the opinion that the petition should be granted.