733 So.2d 146 (1999)
Steven & Mary NERNESS, PlaintiffsAppellees,
v.
CHRISTIAN FIDELITY LIFE INSURANCE COMPANY, DefendantAppellant.
No. 98-1827.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1999.
*148 Mark Terrance Hoychick, Eunice, for Steven & Mary Nerness.
Edward Benjamin Dubuisson, Opelousas, for Christian Fidelity Life Insurance Company.
BEFORE: SAUNDERS, WOODARD, and DECUIR, Judges.
WOODARD, Judge.
In this insurance coverage case, Steven and Mary Nerness filed a petition against Christian Fidelity Life Insurance Company (CFLIC), their health insurance provider, alleging that CFLIC underpaid some of their claims and that payment was made within delays exceeding those tolerated by Louisiana law. The Nernesses also alleged that CFLIC wrongfully terminated dependent coverage of their son, Steven Allen, and their daughter, Misty Dawn. The trial court ruled in favor of the Nerness family, awarding benefits and penalties. CFLIC appeals. We affirm.

FACTS
Steven Nerness, a minister for a Missouri based religious organization, the Assemblies of God (TAG), and Mary, his wife, dedicated their lives to work as missionaries with American Indians.
Through the division of Home Missions of TAG's general counsel, the Nerness family, while residing in Webster City, Iowa, was made beneficiary of a group hospital and medical insurance policy issued by CFLIC, bearing No. DHM87, Certificate No. 61, with an effective date specified for March 8, 1988. The Nernesses' four children, Steven Allen, born February 2, 1972, Misty Dawn, born July 28, 1976, Israel Joshua, born January 16, 1980, and Jacob Harlan, born September 27, 1984, were insured under the CFLIC policy's dependent coverage provision, which set forth the following:
Section 2 DEFINITIONS
2.1 "Dependent" means only the following persons who are not otherwise eligible as Members:
. . . .
2.1.1b. Each unmarried child of the Member who lives with and is dependent upon the Member for the child's main support and care and who is 15 days or over but less than 19 years of age. If upon reaching age 19 such child is covered as a *149 dependent and is a full-time student in high school or in a degree program at an accredited college, he may continue his coverage under the Policy, provided written application is made to the Company and the required premium, if any, is paid within 31 days after the child reaches the limiting age. The insurance of such child shall terminate automatically on the earliest of the dates shown in the Termination of Dependent Insurance provision below....
. . . .
Section 3 ELIGIBILITY AND EFFECTIVE DATE
. . . .
3.9 TERMINATION OF DEPENDENT INSURANCE
. . . .
3.9.2. With respect to medical and health insurance, if an unmarried child upon reaching age 19 is covered as a dependent and is a full-time student in high school or in a degree program at an accredited college, dependent insurance may be continued, provided written application is made to the Company and the required premium, if any, is paid within 31 days after the date such child reaches the limiting age. Dependent insurance on such child shall not continue past the earliest of the following dates:
a. the date when the child first ceases to be currently enrolled as a full-time student in high school or at an accredited college during a regular semester, excluding summer sessions; or....
(Emphasis added).
The family was assigned to work with the Sioux Indians and moved to Mobridge, South Dakota, where they purchased a home. For a twenty-seven-month period, they were subjected to hydrogen sulfite and methane sewer gases leaking through a broken copper pipe located in their basement. It is undisputed that the exposure resulted in severe disabling health problems for the entire family. A report from Dr. Thomas Callender, a specialist in internal medicine and occupational/environmental toxicology from Lafayette, Louisiana to whom the family was later referred, explained that the entire family had "respiratory and neurological problems" and recommended that the entire family be seen by a "neuro-psychologist for testing."
Prior to these findings, in the spring of 1992, Steven Allen became so ill that he was unable to complete the semester for which he was enrolled as a full-time student at the Central Indian Bible College (CIBC). A report issued on October 16, 1992, by Thomas Jurek, a practicing nurse at the Mobridge Family Practice, establishes that Steven Allen was unable to attend CIBC as a result of methane gas poisoning. Eventually, Steven Allen's health improved, and he was able to enroll and complete the following fall semester of 1992. Nevertheless, because he was unable to complete a semester of college, CFLIC dropped Steven Allen from coverage, but reinstated him in April of 1993. However, from then on, CFLIC denied any of his gas poisoning related claims. CFLIC informed Steven Allen that the coverage that he was provided in April of 1993 was new coverage to which the preexisting condition exclusions of the policy applied.
While in South Dakota, the Nerness family was referred to Dr. Callender. First, Dr. Callender treated the Nerness family in South Dakota, then, in June of 1993, Mr. Nerness accepted a ministry with the Coushatta Indians in Elton, Louisiana, primarily to allow his family to follow treatment with Dr. Callender. On April 13, 1993, Dr. Callender issued a report wherein he described the effects of gas poisoning on Misty to be as follows:
Misty became sick almost overnight with fatigue, headaches, nausea, body ache, shortness of breath, coughing, *150 chest tightness. Other (sic) symptoms developed such as, legs cramping up, continued nausea, joint stiffness, rapid heart beat, shallow rapid breathing [...] sinus congestion, sleeping problems, odor intolerance, severe headaches at least twice a week, sore throats, dry cracked lips. She has problems concentrating, malaise, and extremely cold extremities.
Misty graduated from high school in the spring of 1994 and enrolled at Louisiana State University Eunice (LSUE) the following fall. She turned nineteen on July 28, 1995, following which gas poisoning health-related problems kept her from completing the fall semester of 1995. The family moved back to Iowa, and Misty enrolled at Iowa State University (ISU) for the spring semester of 1996 for which she had received a scholarship. Again, her gas poisoning generated infirmities which kept her from completing another semester. Apparently, she could only walk a block before becoming short of breath. She had kidney infections, recurring pneumonia, and congestive heart failure.
Misty obtained an electric wheelchair through the State of Iowa's vocational rehabilitation services, following which she was able to enroll in college and successfully follow her curriculum. Nevertheless, because she was unable to complete a full semester of college, CFLIC terminated Misty's dependent coverage, effective December 31, 1995.
The Nernesses initially filed a petition against CFLIC on September 29, 1994. Their petition was amended on February 6, 1997. Pursuant to a hearing held March 19, 1997, the trial court entered judgment on September 16, 1998. It awarded $2,671.33 for unpaid benefits of Misty; $3,020.03 for unpaid benefits of Steven Allen; $3,020.03 in penalties on the benefits due for Steven Allen; $9,967.63 for benefits due after underpayment on the general policy of the Nernesses' claims; $5,271.78 in penalties for benefits due after underpayment in Louisiana; and $27,245.04 in penalties on late payments of bills incurred in Louisiana. CFLIC appeals.

ASSIGNMENTS OF ERROR
CFLIC asserts that the trial court erred in:
1. Assuming subject matter jurisdiction on medical expenses incurred outside of the State of Louisiana,
2. Finding La.R.S. 22:657 applicable,
3. Awarding penalties and attorney's fees inappropriately because:
A. There were no unreasonable delays in paying the claims.
B. Steven Allen's coverage was properly terminated, and payment for gas poisoning related claims properly because he received new coverage to which the pre-existing condition exclusion of the policy applied.
C. There was no underpayment of claims.
4. Awarding benefits to Misty Dawn and Steven Allen.
5. Finding that there were benefits due because of alleged underpayment.

LAW

SUBJECT MATTER JURISDICTION
CFLIC alleges that the trial court erred in asserting subject matter jurisdiction over a $2,671.33 claim relating to Misty, and a $4,695.95 claim for out-of-state underpayment. CFLIC asserts that there is no logical reason for a Louisiana court to have jurisdiction over a claim for expenses incurred by non-Louisiana residents for medical expenses incurred in Iowa, under the terms of a Texas policy issued by a company domiciled in Texas, through a group domiciled in Missouri. We disagree.
Generally, in Louisiana, jurisdiction is defined as "the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to *151 which they are entitled." La.Code Civ.P. art. 1. Jurisdiction over the subject matter of a claim is defined by La.Code Civ.P. art. 2, as follows:
Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted.
Lack of subject matter jurisdiction, unlike other jurisdictional defects, may not be waived or conferred by the consent of the parties. La.Code Civ.P. art. 3; Tran v. Schwegmann's Giant Super Market, 609 So.2d 887 (La.App. 4 Cir. 1992). Thus, a party may raise an exception of subject matter jurisdiction at any time during the proceedings. Id. Similarly, lack of subject matter jurisdiction may be raised on appeal by the court's own motion. Id.
Pursuant to La. Const. art. 5, § 16, a district court, unless otherwise provided, has original jurisdiction over "all civil and criminal matters," including this case.
It appears that, through this assignment of error, CFLIC is raising an issue which it should have more appropriately raised at trial through a declinatory exception of lack of personal jurisdiction. Because CFLIC did not file such an exception below, it is waived. La.Code Civ.P. art. 926.
The trial court's assertion of subject matter jurisdiction over the aforementioned claims is affirmed.

APPLICABILITY OF LA.R.S. 22:657(A)
In its second assignment of error, CFLIC does not argue the merits of the trial court's decision to grant penalties and attorney's fees but merely asserts that such an award was barred by La.R.S. 22:657(A), because the policy was not issued in Louisiana, as required by the statute.
First, we acknowledge that, apparently, the statute only applies to insurance contracts issued in Louisiana. Indeed, La. R.S. 22:657(A) sets forth, in pertinent part:
All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist.
(Emphasis added). Nevertheless, the scope of the statute is also specified in La.R.S. 22:611 which provides the following:
This Part also shall not apply to any health and accident insurance policy not issued for delivery in this state nor delivered in this state, except for any group policy covering residents of Louisiana, regardless of from where it was issued or delivered.
(Emphasis added). In the case sub judice, it is not disputed that the Nernesses were made beneficiaries of a group insurance policy through TAG when they resided in Iowa. Also, the CFLIC policy was issued to apply to its beneficiaries, such as the Nerness family, no matter in which state they were sent to or living. Finally, the trial court issued penalties and attorney's fees only for the claims that arose while the Nerness family resided in Louisiana. Thus, we affirm the trial court's application of La.R.S. 22:657(A) to the Nernesses' claim.

DEPENDENT COVERAGE
In its fourth assignment of error, CFLIC asserts that the trial court erred in finding that Misty and Steven Allen were covered under the policy once they became unable to complete a full semester of college. We disagree.
Generally, an insurance policy is by nature contractual; hence, it is construed *152 according to the general rules governing the interpretation of contracts. Valentine v. Bonneville Ins. Co., 96-1382 (La.3/17/97); 691 So.2d 665. When interpreting contracts, we must determine the parties' common intent. La.Civ.Code art. 2045. Such a determination is not necessary when the words of the contract are clear and explicit and lead to no absurd consequences. La.Civ.Code art. 2046.
When determining the object of an insurance policy, we shall not perform unreasonable or strange interpretations which would enlarge or restrict its various provisions beyond what was reasonably contemplated and achieve absurd conclusions. Valentine, 691 So.2d 665. Our construction of a policy must fulfill the parties' reasonable expectations when viewed in light of the customs and usage of the industry. Louisiana Ins. Guar. v. Interstate Fire, 93-911 (La.1/14/94); 630 So.2d 759.
When a pertinent provision of the policy, viewed in light of the entire contract, can be reasonably interpreted in two different ways, it is treated as being ambiguous. McCarthy v. Berman, 95-1456 (La.2/28/96); 668 So.2d 721; Pareti v. Sentry Indem. Co., 536 So.2d 417 (La.1988). When an ambiguity exists, it is resolved in favor of coverage and against the insurer. Valentine, 691 So.2d 665, Pareti, 536 So.2d 417.
A coverage exclusion, set forth by an insurance policy, is enforceable in our courts if it is expressed in clear and unmistakable terms. Dubois v. Parish Gov't Risk Agency, 95-546 (La.App. 3 Cir. 1/24/96); 670 So.2d 258. Nevertheless, the purported exclusion must be reasonable, and shall not conflict with statutory provisions or public policy. Id.
In the instant case, CFLIC denied dependent coverage to Steven Allen and Misty on the basis of § 3.9.2.a of the policy which states that dependent coverage is terminated when the dependent ceases to be currently enrolled as a full-time student in an accredited college, during a regular semester, excluding summer sessions. CFLIC asserts that coverage was properly denied when Misty and Steven Allen were unable to complete a semester of college regardless of the reasons justifying such non-completion.
In its reasons for judgment, the trial court rejected CFLIC's argument and stated:
The primary question is whether the policy affords coverage for dependents over the age of 19 who registered for college but became too ill to attend school full time as a result of the accidental poisoning caused while the plaintiffs' children were covered by the policy provisions.
The court answers this question with a resounding yes. The Court further finds that the initial policy issued by the defendant to the plaintiffs was in full force and effect at the time.
We agree with the trial court. First, the exclusionary language of the policy speaks in terms of current enrollment as a full-time student. The issue thus revolves around the interpretation of the word enrollment, which apparently CFLIC interprets to mean presence for the entire semester, in the context of the instant case. We do not subscribe to such a reading. Instead, we read enrollment to mean "to register," WEBSTER, NINTH NEW COLLEGIATE DICTIONARY, 414 (1984), or the act of "recording, enrolling, or registering," BLACK'S LAW DICTIONARY, 477 (5th ed.1979). Thus, all that is required by the policy is that the dependent be registered in school at the beginning each regular semester of college.
In the case sub judice, it is undisputed that, at all times pertinent to the litigation, both Misty and Steven Allen were currently enrolled in college for the beginning of each semester that they eventually failed to complete, through no fault of their own. The record does not reflect that their college enrollment was discontinued for any *153 regular semester. The various colleges that they attended did not, at any time, deny their enrollment when their health allowed them to attend. Furthermore, CFLIC does not claim that they maintained current college enrollment only for the purpose of keeping their insurance coverage. Instead, it is established that their health problems caused their failure to complete any such semester of college. Finally, it does not appear that either Misty or Steven Allen were enrolled as part-time students during the semesters in dispute. Thus, we find that under the clear and unambiguous terms of the policy, Misty and Steven Allen were currently enrolled as full-time students in college. Consequently, CFLIC's denial of coverage as to both Misty and Steven Allen was unjustified.
Furthermore, as a matter of law, we cannot subscribe to CFLIC's interpretation of the policy. It is unconscionable to entertain the self-serving, circular reasoning leading to a conclusion of termination of coverage under these circumstances; namely, that one loses health care coverage because one is no longer attending school solely because of the debilitation arising from the illness which is to be covered. In other words, CFLIC argues that coverage should be denied for one of the very reasons that coverage was initially contracted. We cannot permit such an interpretation, for it is unreasonable and leads to absurd results.

UNDERPAYMENT
In its assignment of error number five, CFLIC argues that the trial court erred in finding that some benefits were due, under the terms of the policy, as a result of an underpayment in the amount of $9,967.63. We disagree.
Finding that CFLIC underpaid under the policy, the trial court stated:
There is no doubt that it is the plaintiff's duty to submit a satisfactory proof of loss. Under the laws of our State the plaintiff need submit only a satisfactory proof of loss (claim). A satisfactory proof of loss is one which is sufficient to fully apprize (sic) the insurer of the insured's claim. The burden thereafter, shifts to the defendant to prove the claim is not payable. The Court finds satisfactory proofs of loss were submitted timely to defendant.
Whether there was an underpayment under the terms of the policy is an issue of fact. It is well settled that a reviewing court may not disturb trial courts' finding of facts, absent manifest error. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). After reviewing the entire record, we cannot say that the trial court's finding was manifestly erroneous.

PENALTIES AND ATTORNEY'S FEES
In its third assignment of error, CFLIC argues that the trial court erred in awarding the Nernesses penalties and attorney's fees under La.R.S. 22:657, because (A) there was no unreasonable delay in paying the claims; (B) Steven Allen's coverage had been properly terminated; and (C) CFLIC did not underpay any of the Nernesses' claims.
At the outset, we note that parts B and C of this assignment of error are pretermitted by our resolution of assignment of error numbers four and five. Consequently, the only issue left before us is whether CFLIC paid the claims with such delays to trigger the penalties and attorney's fees provision set forth by La.R.S. 22:657.
A claim for penalties and attorney's fees, in the context of an insurance policy, must meet the pre-requisites provided by La.R.S. 22:657(A), which provides, in pertinent part:
All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the *154 form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court.
(Emphasis added). Thus, pursuant to the statute, an insurer has the duty to pay a claim within thirty days of its presentation, unless there are just and reasonable grounds justifying a delay. Whether there are such just and reasonable grounds is a question of fact which we will not disturb on appeal, unless it is clearly wrong. Holland v. Golden Rule Ins. Co., 96-264 (La. App. 3 Cir. 10/9/96); 688 So.2d 1186.
In the instant case, the trial court awarded the Nernesses $27,245.04 in penalties on late payments of bills incurred in Louisiana, and attorney's fees. In doing so, the court stated:
With regards to those claims which were incurred in the State of Louisiana the court finds Louisiana law applicable. The Court finds that all claims which were not paid timely by the insurer after proof of loss was furnished to the defendant's insurer subject the insurer to the penalties provided by statute for failure to pay timely. In addition the Court awards $5,000.00 in attorney's fees.
The record reflects that numerous claims were paid by CFLIC with delays greatly exceeding the thirty-day period set forth by La.R.S. 22:657. The burden of proof then shifted to CFLIC to show that it had just and reasonable grounds for such delays. The trial court found that it did not and awarded penalties and attorney's fees.
CFLIC argues that the trial court erred in awarding of penalties for delays in payments because the parties had stipulated to the fact that there was just and reasonable grounds for the delays. We find no merit in this argument. The terms of the disputed stipulation were negotiated between counsels as follows:
Mr. Dubuisson:
And in general, we will stipulate that if he were asked to testify, Mr. Barnett would say that when the claims arrived, because of some problem or something lacking with the claim, based on their standard office procedures, where they required more information, the (sic) would contact either by phone or in writing, the various providers. And depending on how quickly they got the information and how quickly they could respond to that information, the claims were paid, or they were denied as earlier discussed.
. . . .
Mr. Hoychick:
Okay.... I will stipulate .... that the notice of claims was maybe not in your opinion sufficient to constitute proof of loss.
(Emphasis added).
Clearly, this stipulation falls short of a concession that CFLIC had, in fact, just and reasonable grounds for paying claims in excess of thirty days as set forth by La.R.S. 22:657. After reviewing the entire record, we find no clear error in the trial court's decision, and affirm.

CONCLUSION
For foregoing reasons, we affirm the trial court's decision and assign all costs to CFLIC.
AFFIRMED.