**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 6, 2012

No. 10-31091

Lyle W. Cayce
Clerk

WH HOLDINGS, L.L.C.; AXIS US INSURANCE; SWISS RE
INTERNATIONAL SE; LLOYDS OF LONDON; XL INSURANCE
BERMUDA, LIMITED,

Plaintiffs - Appellants,

v.

ACE AMERICAN INSURANCE COMPANY,

Defendant - Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-CV-7110

Before BARKSDALE, GARZA, and ELROD, Circuit Judges.

PER CURIAM:[*]

The sole question presented by this diversity action is whether the construction contract at issue obligated the building owner, WH Holdings, or its contractor, Gootee Construction Company, to purchase property insurance to cover damage to renovation work. The district court determined that WH Holdings bore that obligation under the contract and entered summary

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 10-31091

judgment in favor of Gootee's insurer, defendant ACE American Insurance Company. We VACATE the judgment of the district court and REMAND for further proceedings.

## I.

Prior to Hurricane Katrina, WH Holdings, owner of the Ritz Carlton Hotel complex in New Orleans, contracted with Gootee to perform renovation work on the existing structure of the Ritz. Hurricane Katrina caused damage to the Ritz's Exterior Insulation Finishing System and terra cotta facade.

In August 2007, WH Holdings filed suit against ACE in Louisiana state court, seeking $3,264,812.54, less a $7,500 deductible, in coverage for damage to the exterior of the Ritz.[1] ACE removed the case to federal court. The parties filed cross-motions for summary judgment. The parties did not dispute that their construction contracts incorporate and are governed by AIA Document A201-1997, General Conditions of the Contract for Construction, as expressly amended by the parties (General Conditions). It was also undisputed that the ACE Builder's Risk Policy, which ACE issued to Gootee, provides coverage for WH Holdings only if WH Holdings qualifies as an insured under the policy's Broad Named Insured endorsement, which provides that "any party in interest *which the insured is responsible to insure*" is an insured (emphasis added). Thus, the district court correctly framed the determinative issue as "whether Gootee was contractually obligated, and therefore 'responsible,' to insure WH Holdings such that it became an insured on the ACE policy pursuant to the

---

[1] WH Holdings was initially the only named plaintiff. The other named plaintiffs are WH Holdings's excess insurers. They purchased all of WH Holdings's rights to this action, and pursuant to the district court's order joined this action in May 2010.

No. 10-31091

Broad Named Insured endorsement."[2]  The district court's resolution of that issue depended entirely on its interpretation of the General Conditions.

The General Conditions contract is a form contract that contains numerous amendments that the parties negotiated.  The parties' amendments are readily apparent from the face of the contract.  Deletions are indicated by ~~textual strikeouts~~ and additions by <u>underlining and the use of a different typeface</u>.

The district court granted summary judgment to ACE.  It concluded that WH Holdings is not an insured under the ACE policy's Broad Named Insured endorsement because Gootee was not "responsible" for purchasing property insurance for the renovation work at issue in this case.

The district court began its analysis with General Conditions subsection 11.4, entitled "Property Insurance," and more specifically subsection 11.4.1, which provides in relevant part:

> ~~Unless otherwise provided, the Owner~~ <u>The Contractor</u> shall purchase and maintain . . . property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract modifications and cost of materials supplied or installed by others, ~~comprising total value for the entire Project at the site on a replacement cost basis~~ without optional deductibles.

Based on this amended language, and buttressed by the parties' deletion of section 11.4.1.2, which instructs the *owner* what specific action it must take if it does not intend to purchase the property insurance required by subsection 11.4.1, the district court concluded that it is "clear . . . that WH Holdings and Gootee intended to reverse th[e] roles of insurance responsibility [for procuring

---

[2]  Had the district court determined that WH Holdings was an insured, it would have had to address ACE's alternative argument that its policy is excess to the coverage WH Holdings has through its other insurers.  Given our conclusion that the district court erred in granting summary judgment to ACE, the district court may have to address ACE's alternative argument on remand.

3

No. 10-31091

builder's risk property insurance] in their amended and customized version of the General Conditions." "Thus," the district court reasoned, "if subsection 11.4.1 existed in a vacuum, ACE would have no basis to contest the assertion that Gootee was the party responsible to insure WH Holdings with respect to the renovations at the Ritz."

Nevertheless, the district court concluded that the General Conditions unambiguously obligated WH Holdings, not Gootee, to purchase the property insurance. It reached that conclusion by determining that subsection 11.1.5(g)—an opaque provision from a different section of the contract—unambiguously creates an exception to 11.4.1's general requirement that Gootee purchase property insurance, obligating WH Holdings to carry the insurance "when the construction is an addition or renovation." Despite appearing in section 11.1, which is entitled "Contractor's Liability Insurance," and despite following lead-in language in section 11.1.5 that states that "[t]he insurance covered by paragraph 11.1.1 [which specifies certain types of liability coverage Gootee must carry] shall be written for not less than the following limits[:]," subsection 11.1.5(g) provides:

> g. Builder's Risk Insurance Limits
>
> > Full Replacement Cost Value on the Work being installed as described in the Construction Contract
> >
> > This policy shall name as an [*sic*] named insured the Owner and any other entity required by the Contract between the Contractor and the Owner
> >
> > This policy shall waive subrogation against Owner and any other Owner related entity whether or not required by the Contract between the Contractor and the Owner
> >
> > This coverage will be placed by the Contractor on an "All Risk" replacement cost basis for the

4

No. 10-31091

> full value of the construction *unless the construction is an addition or renovation to an existing structure. If this construction is an addition or renovation than* [*sic*] *the Owner shall be responsible for providing this coverage* and will add the Contractor and its subcontractors and sub-subcontractors as additional insured[s] and waive subrogation against the Contractor and its subcontractors and sub-subcontractors as regards any structures being built or renovated and already existing at the site.

(Italics added.) Relying on the italicized language, the district court concluded that 11.1.5(g) unambiguously qualifies 11.4.1 and obligates WH Holdings to purchase property insurance for renovation work. Because the district court found the contract to be unambiguous, it did not consider the course of conduct evidence submitted by WH Holdings. This appeal timely followed.

## II.

We review "the district court's summary judgment *de novo*, applying the same legal standards used by the district court." *Apache Corp. v. W & T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'[T]he court views all facts and evidence in the light most favorable to the non-moving party,' and '[m]ere conclusory allegations are insufficient to defeat summary judgment.'" *Apache Corp.*, 626 F.3d at 793 (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)).

## III.

For this diversity action, Louisiana law controls. Under Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. Extrinsic evidence is admissible only if "'the

terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed.'" *Brown v. Driller's, Inc.*, 630 So. 2d 741, 748 n.10 (La. 1994) (quoting *Dixie Campers, Inc. v. Vesely Co.*, 398 So. 2d 1087, 1089 (La. 1981)). If a contract is ambiguous, a court must consider any proffered course of conduct evidence. La. Civ. Code art. 2053 ("A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."); *see also Crooks v. Placid Oil Co.*, 981 So. 2d 125, 128 n.1 (La. Ct. App. 2008) ("'[O]ne of the best ways to determine what the parties intended in a contract is to examine the method in which the contract is performed, particularly if performance has been consistent for a period of many years.'" (quoting *Total Minatome Corp. v. Union Tex. Prods. Corp.*, 766 So. 2d 685, 689 (La. Ct. App. 2000))), *writs denied*, 989 So. 2d 104 (La. 2008).

WH Holdings argues that the contract did not unambiguously require it to purchase property insurance for the renovation work at issue and that the district court erred in so concluding. We agree. The district court relied entirely on subsection 11.1.5(g) in finding the contract unambiguous, but subsection 11.1.5(g) is not nearly as "crystal clear" as the district court thought it to be. Whereas section 11.4 of the contract deals with "Property Insurance," as its heading reflects, subsection 11.1.5(g) is located in section 11.1, entitled "Contractor's Liability Insurance." Consistent with its heading, section 11.1 deals exclusively with Gootee's obligation to carry third-party liability insurance—with the arguable exception of subsection 11.1.5(g). Moreover, subsection 11.1.5(g) is one of seven subsections that follow the lead-in clause in 11.1.5, which provides, "the insurance covered by paragraph 11.1.1 shall be

written for not less than the following limits, or greater if required by law . . . ." Paragraph 11.1.1 lists eight types of common third-party claims against which Gootee must insure itself. Thus, to read subsection 11.1.5(g) as modifying subsection 11.4.1's general requirement that Gootee purchase property insurance, rather than setting forth parameters for the liability insurance required by 11.1.1, is to ignore the prefatory language in 11.1.5, which expressly limits the scope of the subsections that follow, including 11.1.5(g), to the third-party liability insurance set forth in subsection 11.1.1. Given these difficulties with the district court's interpretation of the contract, we cannot conclude, as did the district court, that subsection 11.1.5(g) unambiguously obligated WH Holdings to purchase property insurance for renovation work.

Neither do we agree, however, with WH Holdings's further argument that the contract unambiguously required Gootee to purchase the property insurance. WH Holdings has not persuasively explained what 11.1.5(g) could mean if the contract is construed as assigning to Gootee the property insurance obligation for all projects, renovation or otherwise. Given the difficulties with each party's contention that the contract unambiguously supports its position, we conclude that the contract is ambiguous as to whether WH Holdings or Gootee bore the obligation to purchase property insurance to cover the renovation work.

Given our conclusion that the contract is ambiguous, WH Holdings is correct that Louisiana law requires consideration of the parties' course of conduct evidence.[3] La. Civ. Code art. 2053. We therefore remand this case for

---

[3] We reject ACE's argument that the contract's merger clause renders the course of conduct evidence inadmissible. Subsection 1.1.2 of the General Conditions provides that the written contract is the entire integrated agreement of the parties and that "[n]o course of conduct between the parties, no matter how consistent and no matter how violative of the terms or conditions of the Contract for Construction will amend or otherwise modify the Contract for Construction." WH Holdings is not, however, introducing course of conduct evidence to "amend or otherwise modify" the contract, but rather to clarify the parties' intent with respect to an ambiguous provision of the contract. *See Liljeberg Enters., Inc. v. Lifemark Hosps. of La., Inc.*, 620 So. 2d 1331, 1335–36, 1347 (La. Ct. App. 1993) (holding parol evidence

No. 10-31091

the district court to consider that evidence. In addition to such course of conduct evidence, the parties may proffer, and the district court consider, other forms of extrinsic evidence in accordance with Louisiana law. *See* La. Civ. Code art. 2053 ("A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.").

## IV.

We VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

---

admissible to clarify parties' intent where contract at issue contained a similar merger clause), *writs denied*, 621 So. 2d 818 (La. 1993). Moreover, inasmuch as ACE invokes the parol evidence rule, that rule is inapplicable where extrinsic evidence is introduced to clarify an ambiguity. *See* La. Civ. Code art. 1848 ("Testimonial or other evidence may not be admitted *to negate or vary* the contents of an authentic act or an act under private signature." (emphasis added)); *see also McCarroll v. McCarroll*, 701 So. 2d 1280, 1286 (La. 1997) (although inadmissible to vary the terms of a written instrument, parol evidence is admissible to clarify an ambiguity).