WH HOLDINGS, L.L.C.; Axis U.S. Insurance; Lloyds of London; XL Insurance Bermuda, Limited, Plaintiffs–Appellants

v.

ACE AMERICAN INSURANCE COMPANY, Defendant–Appellee.

No. 13–30676.

United States Court of Appeals, Fifth Circuit.

June 26, 2014.

Peter E. Kanaris, Esq., Cheryl Lynn Mondi, Esq., Fisher Kanaris, P.C., Chicago, IL, Glenn G. Goodier, Jones Walker LLP, New Orleans, LA, for Plaintiffs–Appellants.

Leah Nunn Engelhardt, Thomas Harrison Prince, Esq., New Orleans, LA, Edwin G. Preis, Jr., Esq., L. Lane Roy, Preis & Roy, A.P.L.C., Lafayette, LA, for Defendant–Appellee.

Before KING, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM: *

The question in this case is whether the plaintiffs-appellants have pointed to extrin-

---

* Pursuant to 5TH CIR. R. 47.5, the court has     determined that this opinion should not be

sic evidence sufficient to show that there is a genuine fact issue material to resolving a patent ambiguity in a construction contract. The ambiguity at issue concerned whether a construction contractor, Gootee Construction Company, was contractually obligated to purchase property insurance covering the interest of a building owner, WH Holdings, L.L.C., in renovations the contractor was performing. The district court determined that the plaintiffs-appellants failed to show that there was a genuine fact issue material to resolving the contractual ambiguity in their favor, and entered summary judgment for Gootee's insurer, defendant-appellee ACE American Insurance Company. We AFFIRM.

## I. BACKGROUND

Prior to Hurricane Katrina, WH Holdings, L.L.C. ("WH Holdings")[1], owner of the Ritz–Carlton New Orleans ("the Ritz"), contracted with Gootee Construction Company ("Gootee") to perform renovation work at the Ritz. ACE American Insurance Company ("ACE") provided Gootee with a builder's risk insurance policy, which was in force when Hurricane Katrina struck. The storm caused damage to the Ritz's window system and terra cotta façade.

In August 2007, WH Holdings brought suit against ACE in Louisiana state court, seeking $3,264,812.54 in coverage for damage to the exterior of the Ritz during Hurricane Katrina, less a $7,500 deductible. ACE removed the case to federal court in October 2007. In the summer of 2010, the parties filed cross-motions for summary judgment. The parties agreed that their construction contracts incorporated and were governed by the General Conditions of the Contract for Construction, as amended by the parties ("General Conditions"). The parties also agreed that Gootee is the only named insured under ACE's builder's risk policy. As such, WH Holdings could only be covered if it fell under the policy's "Broad Named Insured Endorsement," which provided that "any party in interest which the insured is responsible to insure" is an insured under the policy.

The district court granted ACE's motion for summary judgment, concluding that WH Holdings was not an insured under the builder's risk policy. WH Holdings appealed. A panel of this Court vacated the ruling and judgment in ACE's favor and remanded the case with instructions to consider extrinsic evidence. *WH Holdings, L.L.C. v. ACE Am. Ins. Co.*, 481 Fed.Appx. 894, 899 (5th Cir.2012) (per curiam) (unpublished). The panel explained that the parties' contract was ambiguous as to whether Gootee was obligated to purchase property insurance covering WH Holdings's interests in the renovation work performed at the Ritz. *Id.* at 898.

On remand, the parties again filed cross-motions for summary judgment, each arguing that extrinsic evidence resolved the contractual ambiguity in its favor. In May 2013, after considering the evidence presented by the parties, the district court again granted ACE's motion for summary judgment. The court concluded that WH Holdings had failed to show that there was

published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1. WH Holdings originally brought suit as the sole named plaintiff. WH Holdings's excess insurers, AXIS (US) Insurance Co., XL Insurance (Bermuda) Ltd., Lloyd's of London, and Swiss Re International SE, obtained WH Holdings's rights and joined the suit as plaintiffs in May 2010. WH Holdings and all of the excess insurers, except for Swiss Re International SE, are parties to this appeal. The term "WH Holdings," as used herein, refers collectively to those parties.

a fact issue as to whether the extrinsic evidence resolved the ambiguous General Conditions in Gootee's favor. Because WH Holdings failed to show that the General Conditions required Gootee to procure builder's risk coverage to insure WH Holdings's interest in the renovation work at the Ritz, WH Holdings did not qualify as an insured under the Broad Named Insured endorsement and was therefore not entitled to recovery. The court concluded that, since WH Holdings could not carry its burden, summary judgment for ACE was appropriate. WH Holdings timely appealed the district court's decision.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court, which had diversity jurisdiction under 28 U.S.C. § 1332, issued a final judgment; this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

The Court reviews "a grant of summary judgment *de novo,* viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Pierce v. Dep't of the U.S. Air Force,* 512 F.3d 184, 186 (5th Cir.2007). "[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp.v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citation and internal quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In applying state law in a diversity case, a federal court must follow the substantive decisions of the state's highest court— here, the Louisiana Supreme Court. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.,* 352 F.3d 254, 260 (5th Cir.2003).

## III. DISCUSSION

### A. Louisiana Contract Law

The sole issue on appeal is whether the district court properly concluded that WH Holdings failed to point to extrinsic evidence material to resolving, in its favor, the contractual ambiguity as to whether Gootee was obligated to insure WH Holdings's interest in the renovation work.

In the first appeal in this case, the panel held that the contract between WH Holdings and Gootee is ambiguous. *WH Holdings,* 481 Fed.Appx. at 898. When a contract is ambiguous, "extrinsic evidence is admissible to clarify or to show the parties' intent." *Total Minatome Corp.v. Union Tex. Prods. Corp.,* 33,433, p. 5 (La.App.2 Cir. 8/23/00); 766 So.2d 685, 689 (citation omitted). Intent is an issue of fact to be inferred from all the surrounding circumstances. *Kuswa & Assocs., Inc. v. Thibaut Constr. Co.,* 463 So.2d 1264, 1266 (La. 1985). A court may consider "the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. Civ.Code art.2053. One way to deduce the parties' intent is to examine the method in which the contract is performed, particularly if performance is consistent over a period of many years. *See Arco Oil & Gas Co. v. Union Tex. Prods. Corp.,* 610 So.2d 248, 251 (La.App. 3 Cir.1992) ("A party's intent in entering a contract can be determined by how it operates under the

contract." (citing *Kenner Indus. v. Sewell Plastics*, 451 So.2d 557, 560 (La.1984))). Where no genuine issue of fact exists as to the past conduct and course of dealing of the parties and their predecessors, "the factual issue of intent may be resolved on summary judgment." *Total Minatome*, 766 So.2d at 690.

Under Louisiana law, "in case of doubt that cannot be otherwise resolved a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation." La. Civ.Code art.2057. If the doubt arises from a lack of necessary explanation that one party should have given, or from the negligence or fault of one party, then the contract must be interpreted in a manner favorable to the other party, regardless of whether that party is the obligee or obligor. *Id.* Additionally, the party seeking to enforce an obligation bears the burden of proving the obligation's existence. *Id.* art. 1831.

■ In this case, WH Holdings claims to be an insured under the builder's risk policy ACE issued to Gootee, and argues that ACE is obligated to provide coverage for the damage that the Ritz sustained during Hurricane Katrina. Thus, WH Holdings bears the burden of establishing ACE's obligation to provide coverage to WH Holdings under Gootee's builder's risk policy.[2] If analyzing the parties' extrinsic evidence does not resolve the ambiguity in WH Holdings's favor, or if the contract remains hopelessly ambiguous even after considering the evidence, then WH Holdings will have failed to bear its burden and ACE will not be required to recognize WH Holdings as an insured. *See Miller v. Miller*, 44,163, pp. 7–8 (La.App.2 Cir. 01/14/09); 1 So.3d 815, 819 (declining to recognize the existence of a particular obligation when extrinsic evidence did not resolve the disputed provision's ambiguity).

## B. The Extrinsic Evidence

WH Holdings argues that seven types of extrinsic evidence resolve the contractual ambiguity in its favor: (1) WH Holdings's attorney for the Ritz contract negotiations, Tom Gardner, "made sure" Gootee understood that, under the terms of the Construction Contracts, Gootee had a duty to purchase the builder's risk policy; (2) Gootee included the cost of builder's risk insurance in its estimates to WH Holdings when calculating the guaranteed maximum price for the renovation work; (3) Gootee provided WH Holdings with a Certificate of Liability Insurance; (4) Gootee reported the completed value of each project at the Ritz, and calculated the premium due for each project, in accordance with the terms of the builder's risk policy; (5) under the construction contracts, Gootee was only permitted to charge WH Holdings for insurance premiums that were "necessarily incurred in proper performance" of its work; (6) WH Holdings's representative, Mark Drawbridge, testified that WH Hold-

---

**2.** WH Holdings asserts that it is entitled to a presumption of coverage because it had a reasonable expectation of coverage. "[C]ourts will protect the [insured's] reasonable expectations ... regarding the coverage afforded by insurance contracts even though a careful examination of the policy provisions indicates that such expectations are contrary to the intention of the insurer." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93–C–0911 (La.1/14/94), 630 So.2d 759, 764 n. 9 (quoting R. Keeton & A. Widiss, *Insurance Law* § 6.13 (1988)). But, in Louisiana, the "reasonable expectations doctrine" has only been applied in cases where a court finds ambiguity in an insurance policy—not, as here, in a construction contract entered into by two sophisticated businesses. *See, e.g., Nerness v. Christian Fid. Life Ins. Co*, 98–1827, p. 7 (La.App. 3 Cir. 4/21/99); 733 So.2d 146, 152; *Boudreaux v. Siarc, Inc.*, 97–CA–1067, p. 9–10 (La.App.5 Cir. 4/15/98); 714 So.2d 49, 54.

ings paid the premiums for the ACE policy because it expected the policy to cover any damage to the Ritz; and (7) after Hurricane Katrina, Gootee provided ACE with a Notice of Loss at the Ritz. We consider whether the evidence WH Holdings points to creates a genuine fact dispute material to resolving the contractual ambiguity at issue.

### 1. The Culotta Deposition Testimony

WH Holdings contends that the attorney during the contract negotiations, Tom Gardner, "made sure" Gootee understood it had an obligation to procure builder's risk property insurance under the terms of the General Conditions. WH Holdings does not point to any testimony by Gardner in support of this position. Instead, it points to deposition testimony by Mark Culotta, the renovation project's architect. Culotta stated that it was the parties' attorneys "who made the decision to be sure that the contractor understood that there was to be a provision for various coverages for [the] job." Contrary to WH Holdings's suggestion, however, Culotta did not claim to have personally witnessed Gardner instructing Gootee that it was responsible for insuring WH Holdings's interests in the renovation work. Indeed, Culotta testified that he was not present at the meeting where that issue "would have come up." Accordingly, Culotta's testimony is not material to resolving the contractual ambiguity at issue.

### 2. The Renovation Estimates

WH Holdings argues that the inclusion of the cost of builder's risk insurance premiums in the renovation estimates shows that the parties intended Gootee to insure WH Holdings's interests in the renovation project. ACE responds that Gootee's inclusion of the projected builder's risk premiums in its estimate was Gootee's typical business practice, and that it did so in order to protect its own interests, not those of WH Holdings. ACE points to testimony from several Gootee principals that Gootee procured this coverage because it "could not be sure that the owner's own policy would cover Gootee's risks."[3] The parties' dispute in this case revolves around whether Gootee purchased a builder's risk policy from ACE solely in order to insure its own property or also to insure WH Holdings's property. The inclusion of builder's risk insurance premiums in the renovation estimates is equally consistent with both possibilities. It does not create a genuine fact issue material to resolving the issue of whether the parties agreed that Gootee would insure WH Holdings's interests in the Ritz renovations.

### 3. The Certificate of Liability Insurance

WH Holdings contends that the Certificate of Liability Insurance ("Certificate") that Gootee provided to WH Holdings, which identified WH Holdings as an additional insured, demonstrates that Gootee

**3.** Gootee alleged that one of those risks was loss of "expensive equipment." WH Holdings argues that Gootee's purported concern for coverage for its "expensive equipment" cannot be true because the ACE policy does not provide coverage for "machinery, tools or equipment" unless it is intended to become a permanent part of the building. WH Holdings's argument is unpersuasive because the ACE policy provides coverage for "Covered Property," which includes "temporary structures on site, including cribbing, scaffolding and construction forms," if not otherwise covered by insurance. A Gootee principal testified that the equipment Gootee was concerned about was $1,000,000 in scaffolding and swing stages Gootee had on site at the Ritz—equipment that clearly falls under the "Covered Property."

understood it had the obligation to purchase builder's risk insurance. But, as the district court concluded, the Certificate fails to resolve the ambiguity in the General Conditions because it is, itself, ambiguous. First, the manuscript text in the comment section of the Certificate listing WH Holdings as an additional insured does not reference a specific policy from among several listed on the face of the Certificate. WH Holdings has not pointed to any evidence clarifying whether the reference in the comment section to WH Holdings as an additional insured was applicable to the ACE policy or one of the other listed policies. Second, the unrebutted evidence shows that ACE's broker—and not Gootee—issued the Certificate. Third, the Certificate states that it is a "Certificate of Liability Insurance," while the builder's risk policy at issue here is property insurance. Accordingly, we conclude that the Certificate does not create a genuine fact issue material to resolving the ambiguity in the General Conditions.

### 4. Gootee's Monthly Reports to ACE

WH Holdings argues that Gootee's reporting of each project at the Ritz to ACE, in accordance with the terms of the ACE builder's risk policy, evidences Gootee's obligation to procure insurance covering WH Holdings. The monthly reports, however, do not appear to be material to determining whether Gootee intended to insure merely its own interest in the renovation, or WH Holdings's interest as well. Furthermore, there was evidence that Gootee's general practice in its projects was to insure against its own risks, and the monthly reporting forms to ACE included job entries for Gootee's other projects as well. Accordingly, Gootee's monthly reports do not preclude summary judgment in favor of ACE.

### 5. The "Necessarily Incurred" Provision

WH Holdings argues that Gootee must have intended to insure WH Holdings because, under the construction contracts, Gootee was only permitted to charge WH Holdings for insurance premiums that were "necessarily incurred in proper performance" of its work. The contracts also provided, however, that Gootee could seek compensation for "the portion of insurance and bond premiums that can be directly attributed to this Contract." The district court properly found that this provision was, at most, ambiguous because it could be read to provide that a contractor who incurs an insurance premium directly attributable to its work under the contract can recover that cost. WH Holdings has not shown that the "necessarily incurred" provision in the construction contracts creates a genuine fact issue material to resolving whether Gootee was obligated to insure WH Holdings's interests in the Ritz renovation.

### 6. The Robert Drawbridge Testimony

WH Holdings points to testimony by Robert Drawbridge, its corporate representative, that WH Holdings reimbursed Gootee for the ACE policy premiums "with the expectation that its interests would be covered." As the district court noted, however, Drawbridge had no direct involvement in the formation of the Gootee construction contracts, and there was no pre-Katrina evidence that Drawbridge believed that ACE's builder's risk policy covered WH Holdings. *WH Holdings, L.L.C.*, 2013 WL 2286107, at *10. Indeed, while WH Holdings immediately contacted the primary holder of its master insurance policy, Marriott International, WH Holdings waited two years after Hurricane Katrina to file a proof of loss with ACE. And when Drawbridge executed the Mortgage

Hold Harmless agreement on behalf of WH Holdings, he attested that, after diligent inquiry, no additional insurance payment was expected for the loss at the Ritz. Thus, we find that Drawbridge's subjective interpretations of the relevant contract provisions, made after the loss and during litigation, are not material to clarifying the parties' intent during the contracting process.

### 7. The Notice of Loss

WH Holdings argues that the Notice of Loss that Gootee sent to ACE post-Katrina listed damage to the Ritz. The record does not support WH Holdings's position. As the district court correctly noted, the Notice of Loss reported "damage at job site," and did not include any information about property damage to the Ritz. The Notice of Loss is consistent with ACE's assertion that Gootee was putting its insurer on notice that it might make a claim under its builder's risk policy for damage to its own equipment.

In sum, we conclude that WH Holdings has not pointed to extrinsic evidence creating a genuine fact dispute material to resolving the ambiguity under the contract as to whether Gootee was obligated to purchase property insurance covering WH Holdings.

### C. WH Holdings's Textual Arguments

■ WH Holdings also argues that if we do not resolve the contractual ambiguity in its favor, our holding would render subsection 11.4, "Property Insurance," of the General Conditions meaningless.[4] In the previous appeal in this case, a panel from this court rejected "WH Holdings's . . . argument that the contract unambiguously required Gootee to purchase the property insurance." *WH Holdings,* 481 Fed.Appx. at 898. The panel noted that "WH Holdings has not persuasively explained what 11.1.5(g) could mean if the contract is construed as assigning to Gootee the property insurance obligation for all projects, renovation or otherwise." *Id.*[5]

4. The contractual provisions at issue are subsections 11.4 and 11.1.5(g) of the General Conditions. Subsection 11.4, entitled "Property Insurance," includes subsection 11.4.1, which provides in relevant part:

    11.4.1 The Contractor shall purchase and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk or equivalent policy form in the amount of the mutual Contract Sum. . . .
    11.4.1.1 Property insurance shall be on an "all risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage. . . .
    Subsection 11.1.5(g) states:
    g. Builder's Risk Insurance Limits
    Full Replacement Cost Value on the Work being installed as described in the Construction Contract
    This policy shall name as an [sic] named insured the Owner and any other entity required by the Contract between the Contractor and the Owner.
    This policy shall waive subrogation against Owner and any other Owner related entity whether or not required by the Contract between the Contractor and the Owner.
    This coverage will be placed by the Contractor on an "All Risk" replacement cost basis for the full value of construction unless the construction is an addition or renovation to an existing structure. If this construction is an addition or renovation than [sic] the Owner shall be responsible for providing this coverage and will add the Contractor and its subcontractors and sub-subcontractors as additional insureds and waive subrogation against the Contractor and its subcontractors and sub-subcontractors as regards any structures being built or renovated and already existing at the site.

5. In the previous appeal, the panel described the tension between Section 11.4 and Section 11.1.5(g) as follows:
    Whereas section 11.4 of the contract deals with "Property Insurance," as its heading

390

In light of this issue, the panel held that "that the contract is ambiguous as to whether WH Holdings or Gootee bore the obligation to purchase property insurance to cover the renovation work." *Id.*

WH Holdings's arguments in this appeal, based on the "plain language" of the construction contract, directly contradict the previous panel's holdings that the contract language was ambiguous, and that interpreting it would require the parties to present extrinsic evidence of their intent. As such, we are precluded, under the law of the case doctrine, from reconsidering such arguments here. *See Gene & Gene, L.L.C. v. BioPay, L.L.C.,* 624 F.3d 698, 702 (5th Cir.2010) ("[A]n issue of law or fact decided on appeal may not be reexamined ... by the appellate court on a subsequent appeal." (citation and internal quotation marks omitted)).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

reflects, subsection 11.1.5(g) is located in section 11.1, entitled "Contractor's Liability Insurance." Consistent with its heading, section 11.1 deals exclusively with Gootee's insurance—with the arguable exception of subsection 11.1.5(g). Moreover, subsection 11.1.5(g) is one of seven subsections that follow the lead-in clause in 11.1.5, which provides, "the insurance covered by paragraph 11.1.1 shall be written for not less than the following limits, or greater if required by law...." Paragraph 11.1.1 lists eight types of common third-party claims against which Gootee must insure itself. Thus, to read subsection 11.1.5(g) as modifying subsection 11.4.1's general requirement that Gootee purchase property insurance, rather than setting forth parameters for the liability insurance required by 11.1.1, is to ignore the prefatory language in 11.1.5, which expressly limits the scope of the subsections that follow, including 11.1.5(g), to the third-party liability insurance set forth in subsection 11.1.1. *WH Holdings,* 481 Fed.Appx. at 898. obligation to carry third-party liability